IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GINA M. RIGHTER  )  <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> FRANK M. ZUCCARELLI, DONALD ) <br> MANNING, MARTIN LAREAU, LEONARD ) <br> CHIARO, and SOUTH SUBURBAN COLLEGE ) <br> ) <br> Defendants. ) | No. 09 C 07563 |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

On December 6, 2009, plaintiff Gina M. Righter ("Righter") filed a six count complaint against defendants Frank M. Zuccarelli, Donald Manning, Martin Lareau, Leonard Chiaro, and South Suburban College (collectively "Defendants"), alleging discrimination in violation of the Americans with Disabilities Act ("ADA") (Count I), gender discrimination in violation of Title VII of the Civil Rights Act ("Title VII") (Count II), pay discrimination in violation of the Equal Pay Act ("EPA") (Count III), retaliatory discharge in violation of both the ADA and Title VII (Count IV), violations of her constitutional rights under 42 U.S.C. § 1983 (Count V), and retaliatory discharge in violation of public policy (Count VI). (Dkt. No. 1 ("Compl.").) Righter's claims stem from her employment with, and eventual discharge from, the South Suburban College Police Department ("Department"). Now before the court is Defendants' "Rule 12(b)(6) Motion to Strike and Dismiss the Complaint." (Dkt. No. 6 ("Defs.' Mot.").) For the reasons explained below, Defendants' motion is granted as to Counts I (ADA), II (Title VII),

1

and IV (retaliatory discharge) and denied as to Counts III (EPA), V (§ 1983), and VI (retaliation in violation of public policy).

## BACKGROUND

When ruling on a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and accept as true all well-pleaded facts therein. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). Therefore, for purposes of this motion, the court accepts as true the following version of events as alleged by Righter in her complaint.[1]

On or about January 3, 1989, the Department hired Righter as its only female police officer. (Compl. ¶¶ 11-12.) Defendant Frank M. Zuccarelli ("Zuccarelli") is Chairman of the South Suburban College Board of Trustees (*id.* ¶ 5), and defendant Donald Manning ("Manning") is Vice President of the South Suburban College ("College") and a former Director of the Department (*id.* ¶ 6). Defendant Leonard Chiaro ("Chiaro") became the Police Chief in the early nineties (*id.* ¶ 25), and in 2005, defendant Martin Lareau ("Lareau") became Director of the Department (*id.* ¶ 38(o)). As of the date Righter filed her complaint, both Chiaro and Lareau remained in these positions. (*Id.* ¶¶ 7-8.)

Righter was the only female working for the Department during seventeen of her approximately twenty years of employment. (*Id.* ¶ 12.) Righter initially worked on the third shift from 4:00 p.m. to midnight as an officer and later worked the third shift for ten years as a sergeant. (*Id.* ¶¶ 14, 26.) As a member of the College's Employees' Union, Righter received overtime compensation, paid leaves of absence, and compensation for time spent in a courtroom or at the gun range, in addition to other benefits. (*Id.* ¶ 16.) On or about July 12, 1992, Righter

---
[1] Although Righter's complaint is thirty pages long, this court has limited its background synopsis to the allegations that are relevant to this motion.

was promoted to the rank of sergeant, which, according to the Department's policy, resulted in her loss of union membership. (*Id*. ¶¶ 18, 21.) Consequently, after her promotion, Righter was paid less than the male police officers for similar work due to her loss of union benefits, including overtime pay. (*Id*. ¶ 21.)

In 1995, Righter heard a rumor that the two other sergeants in the Department, both of whom were male, were receiving higher salaries than her. (*Id*. ¶ 30.) Righter asked Manning, who was then Director of the Department, whether she was being paid less than the other sergeants and was told that she was not. (*Id*. ¶ 31.) Sometime thereafter, Righter asked Chiaro to submit a request to the Board of Trustees that her pay be adjusted to match the male sergeants' salaries if her salary was less than theirs. Chiaro took no action in response to her request. (*Id*. ¶ 33.) Furthermore, either Manning or Chiaro instructed the other sergeants and officers in the Department not to discuss their compensation with Righter. (*Id*.)

In 2001, Righter's immune system began to falter following a hysterectomy, leading to various symptoms including a retinal disorder and spondylitis. (*Id*. ¶ 34.) Righter's doctors found that these symptoms would interfere with her ability to work the night shift and to perform aspects of her job that were not administrative or office-related. (*Id*.) Consequently, Righter began applying for jobs at the College outside of the Department, as well as applying for positions within the Department that would not exacerbate her medical condition. (*Id*. ¶ 35.) Over the course of seven years, between June of 2001 and November of 2008, Righter applied for and was denied approximately fifteen positions with the College outside the Department. (*Id*. ¶ 44.) Righter also repeatedly asked to be transferred to the day shift and be given light duty work during this period of time, frequently offering to be demoted to officer from her rank of sergeant to facilitate her request. (*Id*. ¶¶ 35, 38(a), (c), (d), (h), (n), (o), (p), (q).) Her requests

were denied on the grounds that the day shift did not have any available positions (*id.* ¶¶ 38(a), (h), (n), (p)), or that there was no "light duty" position within the Department (*id.* ¶ 38(d)).

On November 27, 2007, the South Suburban Medical Clinic determined that Righter was no longer able to work due to her medical conditions. (*Id.* ¶ 38(y).) On January 4, 2008, Righter was given a twelve month Health and Hardship Leave of Absence pursuant to the Family Medical Leave Act, 29 U.S.C. §§ 2601-2654. (*Id.* ¶ 38(z).) She received her final paycheck from the College on March 31, 2008, and her benefits were terminated on April 1, 2008. (*Id.* ¶¶ 38(aa), (bb).) Between April and the end of November of 2008, Righter continued to unsuccessfully apply for available positions in other departments at the College as well as request to be placed on the day shift at the Department. (*Id.* ¶¶ 40, 42, 44.) On December 9, 2008, Righter filled out a questionnaire with the Equal Employment Opportunity Commission ("EEOC"). (*Id.* ¶ 48.) On December 11, 2008, Righter was called before the Board of Trustees and terminated for being excessively absent from her job. (*Id.* ¶¶ 50-51.) On January 23, 2009, 298 days after receiving her final paycheck, Righter filed a Charge of Discrimination with the EEOC. (*Id.* ¶¶ 52-53; *id.* at Ex. B.)

On February 20, 2009, one of Righter's former coworkers, Officer Alexander, informed Righter that the male sergeants at the Department had received a higher salary than her. (*Id.* ¶ 54.) Righter subsequently learned that male officers had been paid bonuses for doing work that she had performed without receiving extra compensation. (*Id.* ¶ 55.)

On July 14, 2009, Righter received a right to sue letter from the EEOC. (*Id.* ¶ 58.) Within 90 days of receiving the right to sue letter, Righter filed a timely complaint in *Righter v. Zuccarelli*, No. 09-C-6375 (N.D. Ill.), alleging violations of the ADA, Title VII, § 1983, Equal Protection under the U.S. Constitution, and retaliatory discharge. (Case No. 09-C-6375, Dkt.

No. 1.) In response to a Rule 12(b)(6) motion to dismiss filed by Defendants, Righter voluntarily dismissed her suit on November 12, 2009. (*Id.* at Dkt. No. 10.) She subsequently filed her complaint in this case on December 6, 2009.

## LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). To survive a motion to dismiss, a complaint must state a facially plausible claim for relief. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

A claim is facially plausible when the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. A complaint must do more than allege facts that are merely consistent with an entitlement to relief; it must "raise the right to relief above the speculative level" and cross "the line between possibility and plausibility of 'entitle[ment] to relief.'" *Twombly*, 550 U.S. at 555-57 (alteration in original). In ruling on a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, the court must "tak[e] the factual allegations pleaded by the plaintiff[] as true and draw[] all reasonable inferences in [her] favor." *London v. RBS Citizens*, *N.A.*, 600 F.3d 742, 745 (7th Cir. 2010).

## ANALYSIS

**1.      Claims Under the ADA (Count I), Title VII (Count II), and Retaliation (Count IV)**

An individual who believes he or she has been discriminated against by an employer in violation of the ADA or Title VII must file a lawsuit within 90 days of receiving a right to sue

letter from the EEOC. 42 U.S.C. § 12117(a); 42 U.S.C. § 2000e-5(f)(1). Defendants argue that Righter's discrimination and retaliation claims under the ADA and Title VII should be dismissed as untimely because she filed her complaint in this case on December 6, 2009—more than 90 days after receiving her right to sue letter from the EEOC on July 14, 2009. (Dkt. No. 6, Attachment 1 ("Defs.' Mem.") at 2-3.) In the alternative, Defendants contend that Righter's Title VII claim for gender discrimination (Count II) should be dismissed as outside the scope of her EEOC charge. (*Id.* at 3-4.) Righter, however, argues that her claims are timely because the complaint she filed and subsequently voluntarily dismissed in case number 09-C-6375 was filed within the 90 day period, and in Illinois plaintiffs may re-file a voluntarily dismissed suit within one year pursuant to an Illinois savings statute. (Dkt. No. 9 ("Righter's Resp.") at 5-6.) The court agrees with Defendants that Righter's Title VII and ADA discrimination and retaliation claims are untimely.

First, Righter's contention that the Illinois savings statute applies to her Title VII and ADA claims is unsupported. The Seventh Circuit has determined that "state savings statutes do not apply" when "the plaintiff voluntarily dismisses a lawsuit . . . subject to a federal statute of limitations." *Beck v. Caterpillar, Inc.*, 50 F.3d 405, 407 (7th Cir. 1995). Although Righter is correct that *Perkins v. Hendrickson Manufacturing Co.*, 610 F.2d 469 (7th Cir. 1979), suggests that Title VII does not have a statute of limitations and is subject to the Illinois savings provision, post-*Perkins*, the Seventh Circuit has repeatedly referred to the 180/300 day and 90 day filing periods that apply to claims arising under Title VII and the ADA as statutes of limitations. *E.g., Turner v. The Saloon, Ltd.*, 595 F.3d 679, 684 (7th Cir. 2010); *Prince v. Stewart*, 580 F.3d 571, 573-74 (7th Cir. 2009); *Roney v. Ill. Dep't of Transp.*, 474 F.3d 455, 459-

6

60 (7th Cir. 2007). Consequently, the court finds that Righter's reliance on *Perkins* is misplaced, and the Illinois savings statute does not apply.

Furthermore, in *Velasco v. Illinois Department of Human Services*, 246 F.3d 1010 (7th Cir. 2001), the Seventh Circuit specifically held that voluntarily dismissing a timely filed complaint does not toll Title VII's 90 day statute of limitations. *Id.* at 1018. According to *Velasco*, a second complaint filed after a voluntary dismissal will still be considered untimely if filed more than 90 days after the plaintiff received a right to sue letter from the EEOC. *Id.* In this case, Righter's complaint was filed on December 6, 2009, more on than 90 days after receipt of her right to sue letter on July 14, 2009. Other than relying on the Illinois savings statute, she has advanced no argument explaining why the 90 day time limit should not apply. Consequently, Righter's discrimination and retaliation claims under the ADA and Title VII (Counts I, II, and IV) are dismissed as untimely pursuant to *Velasco*. Because Righter's Title VII claims are clearly untimely under established Seventh Circuit law, this court need not address Defendants' alternative argument that Righter's gender discrimination claims should be dismissed as falling outside the scope of her EEOC charge.

**2.      Claims under the EPA (Count III) and § 1983 (Count V)**

Claims brought under the EPA are subject to a two-year statute of limitations, or, in the case of willful violations, a three-year statute of limitations. 29 U.S.C. § 255(a). Actions filed under 42 U.S.C. § 1983 are subject to "the statute of limitations for personal injury in the state where the injury occurred," which is two years in Illinois. *Savory v. Lyons*, 469 F.3d 667, 672 (7th Cir. 2006). Defendants argue that many of the allegations made by Righter in support of her EPA and § 1983 claims should be dismissed or stricken because the events alleged occurred beyond the two-year statute of limitations that applies to both claims. (Defs.' Mem. 5.) Thus,

according to Defendants, Righter should not be able to recover for any constitutional deprivations that occurred or any discriminatory paychecks she received before December 6, 2007. (*Id.* at 5-6.) Righter contends that the relevant statute of limitations for her EPA claim is three years because she is alleging willful violations, and, in any event, either the discovery rule or equitable estoppel should preclude a dismissal based on the statute of limitations because Defendants prevented her from learning of her causes of action.

Specifically, Righter alleges that Defendants instructed officers in the Department not to discuss their compensation with her, repeatedly praised her, and frequently assured her that she would be assigned to the day shift in the near future. (Righter's Resp. 3-4.) According to Righter, these actions prevented her from discovering "the concerted nature of the defendants' disregard of her requests for a transfer or reassignment" until the summer of 2008 and the disparities between her income and those of the male sergeants until February 20, 2009. (*Id.* at 4.) At this stage in the litigation, the court agrees with Righter that her EPA (Count III) and § 1983 (Count V) claims should not be dismissed based on the statute of limitations.

According to the Seventh Circuit, "[i]t is . . . 'irregular' to dismiss a claim as untimely under Rule 12(b)(6)" because plaintiffs are not obligated to defeat affirmative defenses, including the statute of limitations, in their complaints. *Hollander v. Brown*, 457 F.3d 688, 691 n.1 (7th Cir. 2006) (quoting *United States v. N. Trust Co.*, 372 F.3d 886, 888 (7th Cir. 2004)); s*ee also Davis v. Ind. State Police*, 541 F.3d 760, 763 (7th Cir. 2008) ("Complaints need not anticipate, and attempt to plead around, potential affirmative defenses."). "Resolving defenses comes after the complaint stage" because "[a] complaint states a claim on which relief may be granted whether or not some defense is potentially available." *N. Trust Co.*, 372 F.3d at 888. A court nevertheless may dismiss a complaint as untimely under Rule 12(b)(6) if the plaintiff

"pleads itself out of court" by filing a complaint that "establishes an impenetrable defense to its claims." *In re: MarchFirst Inc.*, 589 F.3d 901, 905 (7th Cir. 2009).

Under the "discovery rule," a claim accrues, and the statute of limitations begins to run, on the day "which the plaintiff discovers that he has been injured." *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir. 1991). In employment cases, an action typically accrues on "the date of firing or other adverse personnel action . . . *provided it is communicated to the employee.*" *Id.* at 453 (emphasis added).

Equitable estoppel, on the other hand, operates to preclude a defendant from raising a statute of limitations defense in situations where the defendant has taken steps to prevent the plaintiff from suing in time on accrued claims. *Id.* For example, equitable estoppel would apply in situations where a defendant promised to not raise a statute of limitations defense or took steps to conceal the fact that a plaintiff's injury was a product of wrongdoing. *Id.* (stating that equitable estoppel would apply in an age discrimination case if the defendant "had presented [plaintiff] with forged documents purporting to negate any basis for supposing that [plaintiff's] termination was related to his age"). The Seventh Circuit, however, has determined that a denial of individual involvement in wrongdoing or the denial of liability cannot be the basis for invoking equitable estoppel. *Mitchell v. Donchin*, 286 F.3d 447, 451 (7th Cir. 2002); *Bishop v. Gainer*, 272 F.3d 1009, 1014 (7th Cir. 2001).

Defendants contend that Righter's EPA and § 1983 claims are barred by the statute of limitations because she knew of her claims in 1995. As an initial matter, the court notes that Righter's complaint identifies various events occurring after 1995 which are unrelated to her allegedly discriminatory paychecks. Defendants, however, have not explained why the discovery rule or equitable estoppel would not apply to Righter's § 1983 claims that are based on

9

constitutional violations other than pay discrimination, to the extent that she has asserted such claims. The court accordingly has limited its analysis to Defendants' arguments regarding when Righter knew or should have known of her claims.

Turning to Defendants' arguments, they specifically rely on Righter's allegations that in 1995 she became "privy to a rumor" that the Department's two other sergeants, both of whom were male, were being paid more than her (Compl. ¶ 30); she confronted Police Director Manning with this information, but he assured her it was not true (*id.* ¶ 31); and she subsequently made several unanswered requests, including one to Chiaro, that her pay be adjusted to coincide with the male sergeants' salary if she was being paid less than them (*id.* ¶ 33). However, the court finds that these allegations do not clearly establish that Righter knew or should have known she was being paid less than the male sergeants in 1995. Accepting the Defendants' argument would require this court to draw several inferences against Righter, including that the rumor came from a credible source and that Righter could not have reasonably relied upon Manning's assurance that her concerns regarding her pay were unfounded. Such inferences also contradict Righter's allegations that she did not know about the pay disparity until 2009. (*Id.* ¶ 54.) Drawing all reasonable inferences in Righter's favor, which the court is required to do at this stage in the litigation, the court does not find that the statute of limitations is an "impenetrable defense" to Righter's EPA and § 1983 claims. *See In re Marchfirst, Inc.*, 589 F.3d at 905.

The Seventh Circuit's decisions in *Bishop* and *Mitchell*, cited by Defendants, do not require the opposite result. In *Bishop*, the plaintiff was passed over for a promotion at the Illinois State Police Department ("ISP") by minority employees with lower examination scores than the plaintiff. 272 F.3d at 1014. The plaintiff argued that equitable estoppel should apply to

prevent his claims from being barred by the statute of limitations because the ISP's Equal Employment Opportunity officer incorrectly informed him that the ISP had a legal obligation to give preferential treatment to minorities and that the ISP's conduct, therefore, had not been illegal. *Id.* The court determined that the EEOC officer's "denial of liability" could not "constitute a basis for *equitable estoppel*." *Id.* (emphasis added).

In *Mitchell*, the plaintiff alleged that the defendants violated his First Amendment rights by terminating funding for a community-based program that the plaintiff administered in retaliation for his criticism of another university program. 286 F.3d at 449-50. The plaintiff contended that either equitable estoppel or equitable tolling applied to preclude the statute of limitations from barring his claims because one of the defendants had previously denied any involvment in the decision to terminate funding. *Id.* The court found that "the mere denial of one's role in a potential lawsuit is insufficient to give rise to *equitable estoppel*." *Id.* at 451 (emphasis added).

Thus, in *Bishop* and *Mitchell*, unlike the present case, the plaintiffs were aware of their injuries, i.e. being passed over for a promotion and the termination of funding for the program, and were relying on equitable estoppel as opposed to the discovery rule to prevent application of the statute of limitations defense. Righter, in contrast, essentially invokes the discovery rule in arguing that the Defendants prevented her from discovering her injury: that she was being paid less than the male sergeants. Because neither *Bishop* nor *Mitchell* addresses whether a defendant's concealment of a plaintiff's injury can impact the date of accrual of a cause of action under the discovery rule, the court does not find that those decisions foreclose the application of the discovery rule to postpone the accrual date of Righter's claims.

11

Consequently, Defendants' request to dismiss or strike allegations relating to Righter's EPA (Count III) and § 1983 (Count V) claims that occurred more than two years prior to December 6, 2009, or more than three years prior to December 6, 2009, for claims alleging willful violations of the EPA, is denied.

**3.    Retaliatory Discharge in Violation of Public Policy (Count VI)**

Righter's final claim alleges that she was terminated "in retaliation for [her] intention to sue the College and for seeking to assert her right to a medical leave of absence otherwise assured to the College's employees." (Compl. ¶ 93.)  Under Illinois common law, a plaintiff states a claim for retaliatory discharge in violation of public policy if she pleads that she was "(1) discharged; (2) in retaliation for her activities; and (3) that the discharge violates a clear mandate of public policy." *Blount v. Stroud*, 904 N.E.2d 1, 9 (Ill. 2009).  This court has supplemental jurisdiction over Righter's state law claim pursuant to 28 U.S.C. § 1367, which allows federal district courts jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."  § 1367(a).  However, federal district courts also have the discretion under § 1367 to relinquish supplemental jurisdiction if "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."  § 1367(c).  In determining whether to relinquish supplemental jurisdiction over state law claims, "a district court should consider and weigh the factors of judicial economy, convenience, fairness and comity." *Wright v. Assoc. Ins. Cos.*, 29 F.3d 1244, 1251 (7th Cir. 1994).

Defendants contend that if Righter's Title VII and ADA claims are dismissed, her state law claim of retaliatory discharge in violation of public policy should be dismissed as a pendent state law claim under § 1367(c)(3).[2] In this case, the court finds that retaining supplemental jurisdiction over Righter's retaliatory discharge in violation of public policy claim is appropriate. First, the court is not dismissing Righter's EPA and § 1983 claims over which it has original jurisdiction. Consequently, "the general rule . . . that, when all federal claims are dismissed before trial, the pendent claims should be left to the state courts" does not apply. *Wright*, 29 F.3d at 1252. Second, because the state retaliatory discharge action likely will involve many of the same parties and witnesses, the considerations of judicial economy and convenience to the parties support retaining supplemental jurisdiction over Righter's state law claim. Finally, Righter's allegations that she was terminated in retaliation for filing a charge of discrimination with the EEOC are sufficiently related to her EPA and § 1983 claims to be considered part of the same case or controversy. Accordingly, Defendants' request to dismiss Righter's state law retaliatory discharge claim (Count VI) is denied.

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss (Dkt. No. 6) is granted as to Counts I (ADA), II (Title VII), and IV (retaliatory discharge) of Righter's complaint, and these claims are dismissed with prejudice. Defendants' Motion to Dismiss is denied as to Counts III (EPA), V (§ 1983), and VI (retaliation in violation of public policy). Defendants' Answer is due on or before June 3, 2010. Counsel for all parties are requested to meet pursuant to Rule 26(f)

---

[2] In their Memorandum, Defendants also argued that Righter's retaliatory claim should be dismissed for failure to file a claim with the Human Rights Commission pursuant to the Illinois Human Rights Act. (Defs.' Mem. 4.) In her Response, Righter attached documentation to both her Complaint and Response which established that she had filed a claim with the Human Rights Commission (*see* Righter's Resp., Ex. A), and Defendants do not further dispute Righter's compliance with the Illinois Human Rights Act in their Reply. The court therefore will only consider Defendants' second argument that the retaliatory discharge claim should be dismissed as a pendent state law claim.

and jointly file a Form 52 on or before June 10, 2010. Status hearing set for June 17, 2010 at 9:00 a.m. for purposes of scheduling further dates. The parties are encouraged to discuss settlement.

ENTER:

_____
JAMES F. HOLDERMAN
Chief Judge

Date: May 17, 2010