**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Gina M. Righter,<br><br>                      Plaintiff,<br><br>    vs.<br><br>Frank M. Zuccarelli, Donald Manning,<br>Martin Lareau, Leonard Chiaro, and South<br>Suburban College,<br><br>                     Defendants. | Case No. 09 C 7563<br><br>Chief Judge James F. Holderman |

**<u>MEMORANDUM OPINION GRANTING DEFENDANTS'
UNOPPOSED MOTION FOR SUMMARY JUDGMENT</u>**

On July 13, 2011, in accordance with the schedule previously agreed upon by counsel (Dkt. No. 21), defendants South Suburban College, Martin Lareau, Donald Manning, Frank M. Zuccarelli, and Leonard Chiaro (collectively "Defendants") moved for summary judgment. (Dkt. No. 34.) Plaintiff's counsel did not respond on August 4, 2011, as required by the agreed schedule, but noticed a motion for extension of time to be heard by the court, (Dkt. Nos. 38 and 39), seven days later, on August 11, 2011. Plaintiff's counsel, however, did not appear before the court on August 11, 2011, or any other time, to explain the tardiness of his response or present his request for more time. Plaintiff's counsel's motion to extend more time to respond was therefore denied. (Dkt. No. 41.)

Before the court is Defendants' unopposed Motion for Summary Judgment (Dkt. No. 34), Local Rule 56.1 Statement of Material Facts (Dkt. No. 36), and Memorandum of Law in Support of Motion for Summary Judgment (Dkt. No. 37), as well as exhibits presented by Defendants in support of their motion (Dkt. Nos. 36-2, 36-3, 36-4, 36-5, 36-7, 36-8, 36-9, 36-10, and 36-11.)

After reviewing the filings, accepting Defendants' Statement of Material Facts as true, and evaluating all of those facts in the light most favorable to the plaintiff, who is the non-moving party, Defendants' Motion for Summary Judgement (Dkt. No. 34), is granted.

## Procedural Background

On December 6, 2009, Plaintiff Gina Righter ("Righter") filed her six-count complaint. (Dkt. No. 1.) On May 17, 2010, the court dismissed on Defendants' motion (Dkt. No. 6) Count I (ADA), Count II (Title VII), and Count IV (Retaliatory Discharge) of Righter's complaint. (Dkt. No. 16.) Discovery proceeded and was entirely completed on May 16, 2011. On July 13, 2011, Defendants' moved for summary judgment (Dkt. No. 34) on the three remaining counts of Righter's complaint: Count III (Equal Pay Act) against South Suburban College; Count V (Section 1983) against the individual defendants; and Count VI (Retaliation in Violation of Public Policy) against South Suburban College. Plaintiff Righter's counsel did not respond timely to that motion and did not appear on August 11, 2011, pursuant to his own notice (Dkt. No. 39), to seek an extension of time to respond.

## The Undisputed Material Facts

Righter was employed at South Suburban College ("College") as a police officer from January 1989 until her promotion to sergeant in July 1990. She served as a police sergeant with the College from July 1990 until her termination by the College Board of Trustees at a public meeting in December 2008.

Defendant College is an Illinois public community college located in South Holland, Cook County, Illinois, operated and governed under the Illinois Public Community College Act, 110 ILCS 805/3-1 *et. seq.*, and legally known as Illinois Community College District No. 510, County of

Cook, State of Illinois. Defendant Frank Zuccarelli is the Chairman of the seven-member elected Board of Trustees of the College. Defendant Donald Manning is the Vice President of Administration of the College. Defendant Martin Lareau is the Director of Facilities and the College Police Department. Defendant Leonard Chiaro is the College Chief of Police.

College police officers are members of the Support Staff bargaining unit whereas college police sergeants are members of a management position classification known as "Technical, Professional, Exempt" ("TPE") and have no union status.

When Righter was promoted to sergeant in 1990, she was assigned to be the commanding officer of the police shift that started at 4:00 p.m. and concluded at midnight. Righter was the only female police sergeant at the College throughout her tenure and was the only police sergeant at the College from 2004 until her termination in December 2008. When day-shift male police sergeant Henry Debose separated from employment at the College in 2004, the day-shift sergeant position was eliminated. Thereafter, Righter asked on numerous occasions for a transfer to the day-shift, but declined to accept the lower pay she would receive in the rank of "police officer" to make that transfer.

On October 10, 1996, Righter sent a memo to College Police Chief Chiaro, College President Bruce Aldrich, and Mr. Hafer in Human Resources, asking that her pay coincide with that of the other police sergeants "who are receiving a considerably higher salary then me." (Dkt. No. 36-2, Ex. 1 at 50-51; Dkt. No. 36-4, Gr. Ex. 3 at Dep. Ex. 17.)

Righter was never denied a medical leave of absence by the College and took a series of leaves during her employment with the College, including at least two leaves under the Family Medical Leave Act and two under the College Health and Hardship Leave Policy. She also applied

for and was awarded additional paid sick days from the College Sick Bank. (Dkt. No. 36-2, Ex. 1 at 27-40, 56-61.)

On September 26, 2007, Righter began her final series of medical leaves, which included use of the College Sick Bank, an FMLA Leave, and a one-year College Health and Hardship Leave. Righter never returned to her position as a police sergeant after September 25, 2007. (Dkt. No. 36-2, Ex. 1 at 107-108; Dkt. No. 36-4, Gr. Ex. 3 at Dep. Exs. 1-4, 7-10, 12.) Righter applied for disability with the State Universities Retirement System and began receiving benefits on November 26, 2007, and continues to receive these benefits. (Dkt. No. 36-2, Ex. 1 at 6; Dkt. No. 36-3, Ex. 2 at Interrog. No. 26.)

During Righter's one-year Health and Hardship Leave, Righter received a letter from Kimberly Pigatti, Director of Human Resources, dated October 15, 2008, informing Righter that if Righter did not advise the College by December 1, 2008 of her intention to return to work, Righter would be considered "excessively absent and have abandoned [her] position." (Dkt. No. 36-2, Ex. 1 at 42-43; Dkt. No. 36-4, Gr. Ex. 3 at Dep. Ex. 14.) That letter also informed Righter of her right to appear before the Board of Trustees at the December 11, 2008 meeting regarding the recommendation for termination, and Righter stated that she would appear. (Dkt. No. 36-4, Gr. Ex. 3 at Dep. Exs. 14-15.)

The College Health and Hardship Leave Policy for TPE employees, such as Righter, is the same as that contained within the Support Staff union contract which states, in part:

> The employee on leave shall, at least thirty (30) days before the expiration of the leave, serve notice upon the College as to whether or not the employee shall timely return from the leave. Such notice shall be served upon the College as is provided elsewhere in this Agreement. Failure of the employee to return to work all [sic] the end of the leave provided for in this SECTION shall constitute irrevocable job abandonment.

(Dkt. No. 36-2, Ex. 1 at 65; Dkt. No. 36-5, Gr. Ex. 4 at Bates Nos. 3-4; Dkt. No. 36-6, Ex. 5 ¶¶ 2-6.) Righter notified the College that she was unable to return to her position as a police sergeant due to her medical condition and also submitted a letter from her doctor, Dr. Majid Serushan, which stated that Righter was "not capable of performing the physical tasks required of a police officer, due to her physical condition(s)." (Dkt. No. 36-2, Ex. 1 at 44-45; Dkt. No. 36-4, Gr. Ex. 3 at Dep. Exs. 15-16.)

Kimberly Pigatti, Director of Human Resources, by memorandum dated December 2, 2008, notified College President George Dammer that Righter failed to advise the College of her intent to return to work by the end of her leave and a recommendation was made to the College Board of Trustees to terminate Righter's employment for that reason. (Dkt. No. 36-5, Gr. Ex. 4 at Bates Nos. 91-92; Dkt. No. 36-6, Ex. 5 ¶¶ 2-4, 7.)

Righter appeared before the College Board of Trustees in a closed session on December 11, 2008, and stated, in part, as follows: "So it is a big gamble that I am taking by coming by myself and talking to you guys, but I want to be clear that it is not my intent to sue the college. It is not." (Dkt. No. 36-2, Ex. 1 at 45-49.)

When she was employed by the College, Righter received an annual raise in salary each year beginning on the first day of the College fiscal year of July 1st. (Dkt. No. 36-2, Ex. 1 at 67; Dkt. No. 36-4, Gr. Ex. 3 at Dep. Ex. 22.) Righter was told by college police officers within the last five years, although "it really came up more in the last year before I took my disability," that "we are making more money than you." (Dkt. No. 36-2, Ex. 1 at 114-15.) From 2005 through 2008, no employee in the rank of "police officer" received a higher annual base salary than Righter. (Dkt. No. 36-2, Ex. 1 at 70-72; Dkt. No. 36-4, Gr. Ex. 3 at Dep. Ex. 23; Dkt. No. 36-6, Ex. 5 ¶¶ 2-4, 9.)

Between 1997 and 2007, five other College employees were terminated by the Board of Trustees for their failure to return to work after a one-year leave of absence. (Dkt. No. 36-5, Gr. Ex. 4 at Bates Nos. 5-9; Dkt. No. 36-6, Ex. 5 ¶¶ 2-4, 8.)

The Support Staff union contract provides benefits to police officers such as overtime pay for all hours over 40 worked in a work week, which is paid at 1.5 times regular pay or, in some cases, 2.0 times regular pay; compensatory time which can be accumulated up to 240 hours; call-back pay; stand-by pay; and shift differential pay. (Dkt. No. 36-2, Ex. 1 at 23-24, 62-64, 74-76; Dkt. No. 36-5, Gr. Ex. 4 at Bates No. 112 at Contract Pages 27-36; Dkt. No. 36-6, Ex. 5 ¶¶ 2-4, 6.) The Support Staff union contract provides that Support Staff union members receive a preference on job applications by being given first consideration for other union jobs for which they qualify. (Dkt. No. 36-2, Ex. 1 at 17-18.)

Righter, as the police sergeant, was required to approve overtime hours for the police officers on her shift. Police sergeants at the College have never received overtime pay, compensatory time, call-back pay, stand-by pay or shift differential pay. (*Id.* at 23-27.) College police officers and police sergeants have separate job descriptions. (Dkt. No. 36-5, Gr. Ex. 4 at Bates Nos. 113-15, 119-20; Dkt. No. 36-6, Ex. 5 ¶¶ 2-4, 10.)

Righter testified that the conduct that she engaged in for which the College retaliated against her by terminating her employment on December 11, 2008 included: a six month affair she had with Defendant Manning in 1995; taking the leave of absence which began in 2007 and ended in December 2008; and verbally telling the Defendants Manning, Lareau, and Chiaro in 2007-2008 about taking legal action against them, or taking "whatever legal action is necessary to protect my rights." (Dkt. No. 36-2, Ex. 1 at 8-10, 12-17; Dkt. No. 36-4, Gr. Ex. 3 at Dep. Ex. 15.)

On January 22, 2008, Righter was one of the applicants for the Support Staff position of Academic Secretary in Business Programs, which had a posted an annual salary of $16,822. The Dean of Business and Technology, James Coates, interviewed Angelique Crockett, a student worker in Business Programs, and recommended her for the position. The recommendation was approved by the Board of Trustees at the February 2008 public Board meeting. (Dkt. No. 36-7, Ex. 6, Job-Posting, Application and Board Action; Dkt. No. 36-6, Ex. 5 ¶¶ 2-4, 11-12.)

On February 27, 2008, Righter was one of five applicants for a TPE position of Financial Aid Manager, which had a posted annual salary of $35,000. John Semple, Director of Financial Aid, interviewed Righter and two other applicants, and recommended Christina Williams for the position. The recommendation was approved by the Board of Trustees at the March 2008 public Board meeting. (Dkt. No. 36-8, Ex. 7, Job-Posting, Applications of Righter and Williams, and Board Action; Dkt. No. 36-6, Ex. 5 ¶¶ 2-4, 11-12.)

On April 22, 2008, Righter was one of twelve applicants for a Support Staff position of Administrative Assistant I in the Nursing Department, which had a posted salary of $23,557. The Dean of Nursing, Marjorie Roache, interviewed Righter and three other applicants, and recommended Patricia Mitchell for the position. The recommendation was approved by the Board of Trustees at the June 2008 public Board meeting. Mitchell had served as a secretary in the College Community Education Department since 1989. (Dkt. No. 36-9, Ex. 8, Job-Posting, Applications of Righter and Mitchell, and Board Action; Dkt. No. 36-6, Ex. 5 ¶¶ 2-4, 11-12.)

On August 30, 2008, Righter was one of seven applicants for the TPE position of Executive Assistant in Human Resources. The Director of Human Resources, Kimberly Pigatti, and the retired Executive Assistant of Human Resources, Jeanene Dwyer, interviewed three of the applicants, and

recommended Rea Szpajer-Alder for the position. The recommendation was approved by the Board of Trustees at the September 2008 public Board meeting.

On November 25, 2008, Righter was one of the applicants for the Support Staff position of Administrative Assistant II in Business and Technology. Barbara Schneider received a preference as a qualified Support Staff member, and was recommended by James Coates, Dean of Business and Technology. The recommendation was approved by the Board of Trustees at the January 2009 public Board meeting.

By letter dated November 6, 2001 to Righter from the Dean of Human Resources, Carolyn Croswell, Righter was informed that if Righter were to go to the day-shift as a police officer, her salary would have to be negotiated between the Support Staff union and the administration. (Dkt. No. 36-2, Ex. 1 at 52-55; Dkt. No. 36-4, Gr. Ex. 3 at Dep. Ex. 18.) By letter dated March 27, 2002, to Righter from the Dean of Human Resources, Carolyn Croswell, Righter was informed that if Righter did not return to work after her twelve week FMLA leave, the College could no longer guarantee her position. Righter was also informed that if she took a one-year health and hardship leave and was unable to return to work, "a recommendation to terminate [her] employment [would] be made to the Board at its next regularly scheduled meeting following said date." (Dkt. No. 36-2, Ex. 1 at 56-60; Dkt. No. 36-4, Gr. Ex. 3 at Dep. Ex. 19.)

Righter testified that she received the same medical insurance benefits as all other employees, that she was only disabled "some of the time" during her employment, and that the failure of the College to transfer her to the day shift, starting in 2001, was the cause of the exacerbation of her medical conditions and disabilities. (Dkt. No. 36-2, Ex. 1 at 84-105.)

**Analysis of Undisputed Material Facts Regarding Righter's Claims**

Based on the undisputed material facts, none of Righter's three claims can survive Defendants' motion for summary judgment. There are not any disputed material facts which require resolution at trial. All the materials facts, when viewed in Righter's favor, as they must be at this stage of the litigation, support a judgment for Defendants.

## **Count III – Equal Pay Act Claim**

The evidence in this case establishes that Righter was the only female police sergeant at the College from 1990 to 2008. On October 10, 1996, Righter was told by College President Bruce Aldrich that the male sergeants "were receiving a considerably higher salary" than she was receiving. (Dkt. No. 36-3, Ex. 2 at Interrog. No. 11; Dkt. No. 36-2, Ex. 1 at 50-51; Dkt. No. 36-4, Gr. Ex. 3 at Dep. Ex. 17.) Under these undisputed facts, Righter's claim under the Equal Pay Act with respect to male police sergeants accrued on October 10, 1996. Her complaint which was filed on December 6, 2009 (Dkt. No. 1), is accordingly untimely and beyond the statute of limitations period for intentional discrimination. 29 U.S.C. § 255(a).

Moreover, in accordance with *Snider v. Belvidere Township*, 216 F.3d 616, 618 (7th Cir. 2000), Righter's claim under the Equal Pay Act with respect to male police sergeants accrued no later than June 30, 2004, the date when male sergeant Henry Debose left his employment with the College. (Dkt. No. 36-6, Ex. 5 ¶ 13 & Attachment B.) Righter testified that she knew that the day-shift sergeant position was not filled after Sergeant Debose retired in 2004 and that she knew there were no other male sergeants after 2004. (Dkt. No. 36-2, Ex. 1 at 19-20.) Accordingly, Righter's Equal Pay Act claim with respect to male police sergeants filed on December 6, 2009, is untimely and beyond the statute of limitations period. *Snider*, 216 F.3d at 618.

Pursuant to the "discovery rule," a claim accrues – and the statute of limitations begins to run – on the day when the plaintiff discovers she or he has been injured. *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir. 1991). The undisputed facts establish that Righter knew she received less pay than male police officers on a date five years prior to November 26, 2007. Therefore, her complaint filed on December 6, 2009, (Dkt. No. 1), is beyond the Equal Pay Act's statute of limitations.

Righter began receiving disability benefits from the State Universities Retirement System on November 26, 2007, and continues to receive these benefits. (Dkt. No. 36-2, Ex. 1 at 6; Dkt. No. 36-3, Ex.2 at Interrog. No. 26.) Officers would say to Righter: "I don't know why you are a sergeant because we make more money than you make." (Dkt. No. 36-2, Ex. 1 at 114-15.) Righter admitted she was told this by College police officers "within the last five years" but it "really came up in the last year, before I took my disability." (Dkt. No. 36-2, Ex. 1 at 115.)

Consequently, Righter discovered that she was being paid less than male police officers on a date before she took her disability, which began on November 26, 2007, and for a period of five years before that date, beyond the two-year statute of limitations and, even beyond the three-year statute of limitations for intentional discrimination.

Even if the statute of limitations did not preclude her Count III Equal Pay claim, to establish a *prima facie* case under the Equal Pay Act, Richter must show: (1) that different wages were paid to employees of the opposite sex; (2) that the employees do equal work which requires equal skill, effort and responsibility; and (3) that the employees have similar working conditions. *Snider v. Belvidere Township*, 216 F.3d 616, 619 (7th Cir. 2000) (citations omitted).

Righter, as a sergeant, was the commanding officer of the police officers and was superior to officers in the chain of command. She also personally assigned overtime hours to the officers. The officers received overtime pay for hours worked beyond forty per week and received numerous other monetary benefits, such as compensatory time, as members of the Support Staff bargaining unit. Righter on the hand was in a management position in the "Professional Technical Exempt" job classification. She was not a member of the union and did not receive overtime pay, compensatory time, or other pay beyond her annual salary. These conditions of employment for both union police officers and non-union police sergeants existed since the time Righter became a sergeant in 1990. (Dkt. No. 36-2, Ex. 1 at 23-27, 62-64, 74-76; Dkt. No. 36-5, Gr. Ex. 4 at Bates Nos. 112 and Contract Pages 27-36; Dkt. No. 36-6, Ex. 5 ¶¶ 2-4, 6.)

The evidence also establishes that no male officer, at least as far back as July 1, 2005, received a higher base salary than Righter. (Dkt. No. 36-4, Gr. Ex. 3 at Dep. Ex. 23; Dkt. No. 36-6, Ex. 5 ¶ 9.) In addition, police sergeants and officers have separate College Job Descriptions. (Dkt. No. 36-5, Gr. Ex. 4 at Bates Nos. 113-15, 119-20; Dkt. No. 36-6, Ex. 5 ¶ 10.) Some of the many supervisory duties in Righter's job description state that she: schedules, supervises, coordinates and monitors the activities of campus police officers; trains personnel; reviews performance and incident reports for referral to Chief; trains, supervises, and assists in the evaluation of campus police officers; assumes primary responsibility for particular shift assigned; evaluates reports of officers for errors, lack of information and incompleteness; coordinates special events with College or local police authorities; and reports potential disciplinary matters to Chief. (Dkt. No. 36-5, Gr. Ex. 4 at Bates Nos. 113-14.) To put it simply, Righter was the supervisor and commanding officer of the

police officers, with an entirely different set of job duties and responsibilities reflecting her supervisory, management position as a sergeant.

It is the direct result of different working conditions, such as overtime pay, that an officer may achieve a higher gross pay than Righter in a given year, while not having a higher base salary than Righter. Under the circumstances, Righter cannot establish a prima facie case of discriminatory pay as compared to College police officers. Furthermore, there is simply no evidence that the individual defendants engaged in acts which resulted in their intentional constitutional deprivations related to Righter's salary or the payment thereof in any manner. Accordingly, Righter has failed to establish the three elements of a prima facie case with respect to Count III against any defendant.

## Count V – Section 1983 Claim

Section 1983 provides a cause of action against local governments and their employees for violations of rights secured under the U.S. Constitution. *Trautvetter v. Quick*, 916 F.2d 1140, 1148 (7th Cir. 1990). Although § 1983 provides a remedy for deprivation of specific constitutional rights, it does not provide a remedy for generalized allegations of constitutional rights. *Id.* at 1148 (citation omitted).

In Count V of her complaint (Dkt. No. 1), Righter alleges a violation of § 1983 and expressly brings the action against the four individual defendants, but not against the College. Nowhere does Righter state or identify the specific constitutional right of which she was allegedly deprived. Instead, Count V refers to deprivations which caused her "to suffer exacerbations of her disability, monetary losses and many other damages" as well as "each paycheck" received by the plaintiff and "the necessity for medical treatment." (Dkt. No. 1 at 29-30)

The statute of limitations period for Righter's § 1983 claims runs back to December 6, 2007, two years before Righter's complaint was filed. *See Savory v. Lyons*, 469 F.3d 667, 672 (7th Cir. 2006). Analyzing the "discovery rule" that applied to Righter's Equal Pay Claim in Count III, which also applies to her § 1983 claim in Count V, the relief Righter seeks in Count V is also precluded.

Turning to Righter's allegations that the College's not transferring her to the day-shift when she first asked for a transfer in 2004, exacerbated her disabilities and caused harm to her medical condition, Righter admitted in her deposition testimony that that harm ended when she took her leave of absence from her work at the College on September 26, 2007. This was more than two years before Righter's complaint was filed on December 6, 2009, and Count V is also barred by the two-year statute of limitations.

## Count VI – Retaliatory Discharge Claim

In Count VI, Righter alleges that she suffered common law retaliatory discharge by the College in violation of the public policy of Illinois "for Plaintiff's intention to sue the College and for seeking to assert her right to a medical leave of absence otherwise assured to the College's employees." (Dkt. No. 1 at 30.) In her deposition testimony, Righter stated another reason for the alleged retaliatory discharge was her six-month affair with Defendant Manning in 1995. (Dkt. No. 36-2, Ex. 1 at 8-10.)

The Illinois Supreme Court has made it clear that under Illinois common law, in order to establish a retaliatory discharge claim, "the plaintiff must plead and prove that she was '(1) discharged; (2) in retaliation for activities; and (3) that the discharge violates a clear mandate of public policy.'" *Blount v. Stroud*, 314, 904 N.E.2d 1, 9 (Ill. 2009) (quoting *Hinthorn v. Roland's of Bloomington, Inc.*, 519 N.E.2d 909, 911 (Ill. 1988).)

The undisputed material facts establish that Righter was discharged because she had exhausted all of her paid and unpaid leave time under the College's policy that applied to all College employees. Righter notified the College at the end of her final, one-year leave that, according to her doctor, she was not capable of performing the tasks required of her position as a police sergeant. (Dkt. No. 36-2, Ex. 1 at 44-45; Dkt No. 36-4, Gr. Ex. 3 at Dep. Exs. 15-16.) The College's policy in relation to a final, one-year health and hardship leave, which could be utilized by a College employee after all sick days, vacation days, and FMLA leave had been exhausted, was set forth in the Support Staff collective bargaining agreement. It was available to all full-time College employees. (Dkt. No. 36-6, Ex. 5 ¶¶ 2-5 & Attachment A.) Righter availed herself of that to the fullest extent possible and the College accorded her that entitlement. The undisputed material facts establish that no defendant in this case retaliated against Righter.

## **CONCLUSION**

Summary Judgment is ordered entered in favor of the Defendants and against the plaintiff on Count III, Count V, and Count VI. All alleged claims in plaintiff Righter's complaint having been adjudicated, this case is dismissed and terminated in its entirety.

ENTER:

_____
JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: August 16, 2011